966 F.2d 1453
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles MORRIS, Plaintiff-Appellant, Counterclaim Defendant,
v.
CENTURY II STAFFING, INC., Defendant-Appellee,
Arlington Corporation, Defendant-Appellee, Counterclaim Plaintiff.
 No. 91-5909.
 United States Court of Appeals, Sixth Circuit.
 June 25, 1992.
 
 Before KENNEDY, BOGGS and KRUPANSKY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Charles Morris (Morris), appealed the district court's imposition of civil contempt dated June 25, 1991 for violating its order dated November 30, 1990. The contempt finding enjoined Morris from competing with Arlington Funeral Homes until December 8, 1991 and ordering him to pay damages to Arlington in the amount of $21,000, less damages already paid pursuant to the November order.
 
 
 2
 On December 2, 1988, Arlington, a Delaware corporation with its principal place of business in Georgia, purchased the Justice and Johns Creek Funeral Homes ("Arlington Homes") which are located in Pikeville and Meta, Kentucky. Plaintiff, who was the Coroner of Pike County, was employed as a manager by the previous owner of the Arlington Homes. He subsequently signed an agreement with Century II Staffing ("Century II"), a corporation which hired and leased employees for Arlington, to continue as manager of the Arlington Homes. The agreement, which was renewable indefinitely unless terminated by either party, provided that Arlington would employ Morris for one year. Further, the agreement contained an anti-competition clause which provided that for a period of two years after the termination of the agreement, Morris was precluded from operating, developing or owning, directly or indirectly, any interest in any funeral home within a radius of fifty miles of Arlington Homes. It was undisputed that Morris read and understood the agreement and the covenant not to compete included therein.
 
 
 3
 On May 31, 1989, Morris voluntarily resigned his employment with Arlington Homes. After his resignation, Morris purchased[1] and began operating the Morris Funeral Home, which was incorporated in Kentucky on June 6, 1989, and opened for business on September 8, 1989. Morris Funeral Home was within a 50-mile radius of the Arlington Homes.
 
 
 4
 After discovering that Morris intended to operate a funeral home within fifty miles of its facilities, Arlington contacted Morris and reminded him of his obligations under the agreement and advised him that it was prepared to initiate any necessary steps to enforce its rights. Morris subsequently filed a complaint for declaratory relief in the Pike County Circuit Court on July 10, 1989, naming Arlington and Century II as defendants. Arlington and Century II removed the action to the Eastern District of Kentucky based on diversity jurisdiction and asserted a counterclaim for breach of the employment agreement.
 
 
 5
 On April 4, 1990, the district court concluded that the restrictive covenant not to compete was reasonable in terms of both duration and territory and in light of the injury posed by Morris' unfair competition. Accordingly, the court awarded Arlington $21,000 in lost profits and enjoined Morris from competing with Arlington Homes until December 8, 1991.
 
 
 6
 Morris timely filed his notice of appeal on May 3, 1990. Thereafter, on November 27, 1990, the parties filed a joint motion for relief from judgment and entry of an agreed order pursuant to Fed.R.Civ.P. 60(b)(6).[2] The motion requested that the district court terminate the controversy between the parties by approving the agreed order. The district court approved the joint motion for relief from judgment and the agreed order on November 30, 1990. No right to appeal this order was reserved by either party. The Sixth Circuit subsequently remanded the action to the district court on January 10, 1991. Thereafter, the district court ordered the action stricken from the docket on March 6, 1991.
 
 
 7
 The agreed order provided that Morris be enjoined from operating, developing, or owning any interest in a funeral home within a radius of fifty miles of the Arlington Homes until May 15, 1991. Further, Morris was required to pay Arlington $10,500 of the outstanding damages of $21,000 previously awarded on or before May 15, 1991, to refrain from recommending any particular funeral home to any person, and to direct any questions of potential clients to the funeral homes themselves. Finally, Morris agreed to refrain from any affiliation with Morris Funeral Home through May 15, 1991, i.e., he could not represent himself to third parties as an agent or representative of Morris Funeral Home and could not indicate any affiliation with the Home, such as assisting in the operation of the Home, quoting funeral prices to third parties, excessive appearances at the Home, or riding as a passenger in the hearse used by Morris Funeral Home. The consent order provided that if the trial court should find Morris in future contempt of the consent decree, the court was to reimpose the $21,000 in damages previously awarded, less the $10,500 already paid to Arlington and further enjoin Morris from competing with Arlington until December 8, 1991.
 
 
 8
 On May 15, 1991, Arlington filed a motion seeking citation in contempt of the November 30, 1990 court order. Arlington charged that Morris openly solicited business on behalf of the Morris Funeral Home. Morris filed a brief in opposition to the motion for contempt on May 29, 1991.
 
 
 9
 At the hearing on the motion, the parties presented the following evidence in support of their respective positions. First, Arlington asserted that Morris violated the agreed order because he attended an unreasonable number of funerals at Morris Funeral Home and attended those services as a Morris Funeral Home representative rather than as a mourner or politician. James Justice, the Deputy Sheriff whose responsibilities included escorting funeral processions, testified that Morris was present at 50 to 75 percent of the Morris Funeral Home services which Justice personally escorted. Justice further testified that he observed Morris shaking hands and greeting people during funerals conducted at Morris Funeral Home after the court order became effective and that in his opinion Morris was acting as a funeral director and not as a mourner or politician. Justice further stated that although politicians often shake mourners' hands at funerals, they did not attend services as frequently as the plaintiff.
 
 
 10
 Morris testified that since November 30, 1991, he attended approximately one third to one-half of the funerals at Morris Funeral Home. He further stated that he appeared at the services of other funeral homes, although he did not frequent those as often as the services conducted at the Morris Funeral Home. Morris testified that he attended these funerals as a politician and that the Sheriff of Pike County attended 50 percent of the funerals conducted at every funeral home in the county. He asserted that he appeared at Morris Funeral Home more frequently because he would either visit his wife who worked at the Home or go to his office which was located at the Home until January 1, 1991.[3]
 
 
 11
 The court noted in its findings of fact that Morris admitted that he attended approximately fifty percent of the funerals conducted at Morris Funeral Home during the time the agreed order was in effect. Although Morris testified that he was at the funerals as a private mourner-politician, the court determined that the evidence demonstrated that Morris attended far more funerals at the Morris Funeral Home than at any other and that some of his actions were more consistent with those of a funeral director than as a private mourner.
 
 
 12
 Arlington further charged that Morris violated the agreed order when he told potential customers that he would resume work at the Morris Funeral Home on May 15, 1991. Arlington alleged that Morris solicited the business of widow Judith Ann Childers ("Childers") while acting as Pike County Coroner. Don Frederick ("Frederick"), a local minister, testified that while he was consoling Childers at the Pikeville Hospital after learning of her husband's murder, Morris arrived at the hospital in his official capacity as coroner to meet with Childers concerning the death and disposition of her husband's remains. Frederick stated that after Childers told Morris that she planned to take her husband to Johns Creek Funeral Home, Morris suggested that she go to Morris Funeral Home where his wife "would be glad to help." He further testified that at no time did Childers request Morris to recommend a funeral home, nor did Morris mention any funeral home other than the Morris Funeral Home in his conversation with Childers.
 
 
 13
 In response, Morris related that he did not solicit business from Childers. He testified that while acting in his capacity as county coroner, he would advise people that he would resume his duties at the Morris Funeral Home on May 15, 1991. Morris also presented the sworn testimony of Childers who stated that Morris approached her as coroner to obtain her authorization for an autopsy. She further testified that after she told Morris that she planned to use the Johns Creek Funeral Home, she inquired whether Morris would be at Johns Creek to prepare the body. In response, Morris advised her that he no longer worked at Johns Creek. Childers then inquired where Morris worked, and he told her that his wife owned a funeral home but he could not prepare the body.
 
 
 14
 In its findings of fact, the court recognized the conflicting testimony concerning the conversation between Morris and Childers. The court concluded that it was beyond dispute that Morris told Childers that he would be available to serve as a funeral director as of May 15, 1991. Further, the court noted that Morris candidly admitted to telling potential customers of his future relationship with the Morris Funeral Home.
 
 
 15
 Finally, Arlington charged that Morris advertised his affiliation with the Morris Funeral Home in various publications prior to the May 15, 1991 deadline.[4] One of the advertisements was located in the December 1990 National Funeral Directors Association Directory ("Directory"), which listed Morris as a Morris Funeral Home representative. Faye Morris, a shareholder of Morris Funeral Home and plaintiff's wife, testified that the Directory required updated material to be submitted by August of 1990 in order for the changes to appear in the following December edition. Morris' co-counsel, Kelsey Friend, testified that after the November 30, 1990 order was filed, he completed and sent paperwork to the state board to notify it that Morris was no longer the manager of Morris Funeral Home and contacted the licensing board regarding the purchase of a minor sale of stock in Morris Funeral Home owned by Morris and transferred to Sherman Hatfield. Further, Richard Justice testified that the publisher of the Directory obtained information regarding funeral homes through the state.
 
 
 16
 The district court noted in its findings of fact that the December 1990 National Funeral Director Directory required updated material to be submitted by August of 1990 in order for it to appear in the December issue.
 
 
 17
 The second advertisement was placed by Morris with The Williamson Daily News on the morning of May 15, 1991, which listed Morris as both owner and manager of the Morris Nursing Home. Morris testified that he was told by his attorney that the injunction was to terminate on May 15, 1991, and therefore, he did not believe that placement of the advertisement would be in violation of the order.
 
 
 18
 The district court concluded that Morris placed an advertisement in a local newspaper which referenced him as owner and manager of the Morris Nursing Home on the day the order was set to expire, May 15, 1991.
 
 
 19
 On June 25, 1991, the district court concluded that Morris demonstrated civil contempt of the agreed order restraining him from acting as an agent of Morris Funeral Home. Plaintiff timely filed his notice of appeal on July 23, 1991.
 
 
 20
 In his first assignment of error, plaintiff contended that the provision in the November 30, 1990 court order which permitted the court to extend the period of the injunction to December 8, 1991 and to increase the damages due to Arlington should Morris be in contempt of the order was invalid, and therefore, could not presently be enforced. This Court does not have jurisdiction to review the validity of any of the provisions in the November order because the plaintiff may not appeal the entry of a judgment via his endorsement of a consent decree unless he reserved his right to appeal. Laczay v. Ross Adhesives, 855 F.2d 351, 354-55 (6th Cir.1988). Accordingly, this assignment of error is without merit.
 
 
 21
 In his second assignment of error, plaintiff charged that the court abused its discretion when it found Morris in civil contempt of the November 30, 1990 agreed order. Upon review, this court must determine if the district court abused its discretion when it concluded that Morris was in civil contempt of the November 30, 1990 court order. Peppers v. Barry, 873 F.2d 967, 968 (6th Cir.1989). An abuse of discretion occurs when the district court has relied on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard. Black Law Enf. Officers Ass'n. v. City of Akron, 824 F.2d 475, 479 (6th Cir.1987). The primary inquiry in a civil contempt charge is whether the plaintiff took reasonable steps within his power to comply with the court's order. Id. at 969.
 
 
 22
 A review of the record disclosed that the plaintiff was in civil contempt of the November 30, 1990 agreed order. First, the district court concluded that plaintiff violated the provision of the order which stated that Morris "shall be permitted to attend a reasonable number of funerals at any funeral, but shall attend as a private mourner, and not as a representative of Morris Funeral Home." Accordingly, the court did not abuse its discretion when it concluded that plaintiff attended far more funerals at the Morris Funeral Home than at any other as a funeral director than as a private mourner.
 
 
 23
 Secondly, plaintiff argued that he did not violate the November order when he told people that he would return to the Morris Funeral Home on May 15, 1991. He further claimed that the court erroneously concluded that Morris told Childers that he would resume his position at the Morris Funeral Home on May 15, 1991. However, an employee with a duty not to compete may not solicit customers for such rival business nor can he do other similar acts in direct competition with the employer's business. Restatement (Second) of Contracts, § 323(e) (1981). Accordingly, this same standard must apply to a former employee who is enjoined from competing pursuant to a restrictive covenant.
 
 
 24
 The record disclosed that plaintiff told various individuals that he would resume management of the Morris Funeral Home on May 15, 1991. Although Childers did not testify that plaintiff told her he would return to work as a funeral director on May 15, the plaintiff admitted that he advised others of this date. Accordingly, the district court's conclusion that plaintiff breached the advertisement provision of the November order was not clearly erroneous.
 
 
 25
 Finally, plaintiff urged that he did not intend to violate the May 15, 1991 deadline when he advertised in The Williamson Daily on May 15, 1991 that he was the manager of the Morris Funeral Home. He contended that his attorney advised him that the injunction terminated on not after May 15, 1991. This Circuit has directed that advice of counsel and good faith conduct do not relieve an individual from liability for civil contempt as willfulness is not an element of civil contempt. TWN Manufacturing Co. v. Dura Corp., 722 F.2d 1261, 1273 (6th Cir.1983). Accordingly, this argument is without merit.
 
 
 26
 Accordingly, the district court's conclusion that the plaintiff violated the court order was not clearly erroneous.
 
 
 27
 Based upon the record, and the briefs and arguments of counsel, the disposition of the district court is AFFIRMED.
 
 
 
 [1]
 Morris owned five shares of stock, his wife owned 95 shares, and Palmer and Gary Justice each owned 100 shares of stock
 
 
 [2]
 Pursuant to First National Bank of Salem v. Hirsch, 535 F.2d 343 (6th Cir.1976), the proper mode for implementation of a Rule 60(b) motion to enter a proposed agreed order is for the parties to seek approval from the district court for its entry. Following entry of an order from the district court approving the agreed order and rescinding the prior judgment, the court of appeals will remand the action to the district court for entry of the agreed order. Id
 
 
 [3]
 The agreed order required Morris to move his coroner's office from the Morris Funeral Home premises by January 1, 1991
 
 
 [4]
 The district court addressed the propriety of three advertisements. However, plaintiff objected to the court's ruling on only two advertisements