KAREN NELSON MOORE,
dissenting in part and dissenting in judgment.
I disagree with the majority’s resolution of Patricia Speck’s constructive-discharge and hostile-work-environment claims. Because the majority improperly limits its consideration of Speck’s probative evidence and because triable issues remain with regard to both claims, I would reverse the summary judgment of the district court and remand for further proceedings.
In analyzing Speck’s claim of constructive discharge, the majority mistakenly restricts its analysis of whether Speck suffered an adverse employment action to the City’s denial of Speck’s request to change her convalescence location. In the case of a constructive discharge, however, “the actionable conduct is not a discrete, identifiable act” that occurs prior to an employee’s resignation, such as the City’s denial of Speck’s request, but instead the actionable wrong is that an employer has “intentionally ereate[d] an intolerable work atmosphere that forces an employee to quit involuntarily.” Flaherty v. Metromail Corp., 235 F.3d 133, 138 (2d Cir.2000); see also Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1110 (9th Cir.1998); Chapman v. Carmike Cinemas, 307 Fed.Appx. 164, 174 (10th Cir.2009) (unpublished opinion).
Speck’s constructive discharge occurred when she resigned on May 27, 2005, which is the date that her cause of action accrued. Mayo v. Kenwood Country Club, Inc., No. 97-4007, 1998 WL 863624, at *2 (6th Cir. Nov.23, 1998) (unpublished opinion); accord Flaherty, 235 F.3d at 138-39 *627 (citing Draper, 147 F.3d at 1110). Although acts or events occurring outside the 300-day statute of limitations are not themselves separately actionable, we must consider those events when determining if the last actionable conduct — the alleged constructive discharge — was the product of discriminatory behavior. Cf. Nat’l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (“Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.”); Wells v. New Cherokee Corp., 58 F.3d 233, 236 (6th Cir.1995) (noting that the plaintiff “may offer” a defendant’s time-barred “conduct as evidence of its motivation for eventually firing” the plaintiff). As aptly stated by another panel of this court, a plaintiff may prove a “claim of constructive discharge with evidence of events occurring prior to” the statute of limitations cut off because “[statutes of limitations apply to claims, not the evidence supporting the claims.” Boggs v. Kentucky, No. 95-6452, 1996 WL 673492, at *2 (6th Cir. Nov.20, 1996) (unpublished opinion) (citing Black Law Enforcement Officers Ass’n v. City of Akron, 824 F.2d 475, 482-83 (6th Cir. 1987)). The majority misconstrues the denial of Speck’s request to change her convalescence location as the sum of Speck’s constructive-discharge claim. That action, however, was only one of many facts that Speck argues forced her to resign, and it is her ultimate resignation that forms the basis of Speck’s claim.
Considering the totality of Speck’s circumstantial evidence and viewing the facts in the light most favorable to Speck, I believe that Speck has raised triable issues regarding whether she was constructively discharged. Although the City attempts to justify its treatment of Speck leading up to her resignation as the product of legiti-rnate and non-discriminatory exercises of its disciplinary and policy-enforcement powers, I believe that Speck has presented sufficient evidence to allow a jury to reject the City’s explanations as pretextual and to conclude that the real reason for the City’s actions was a discriminatory one. See Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 521 (6th Cir.2008); Logan v. Denny’s, Inc., 259 F.3d 558, 568-69 (6th Cir.2001). Although the mere replacement of Speck with a younger worker is not sufficient alone to establish pretext, Speck was replaced with a younger woman whom Speck had recruited and trained, a fact from which a jury could reasonably conclude that the City was not concerned with ■ Speck’s methodology or work but instead that the City possessed an “out with the old, in with the new” mentality. There is also evidence that the City attempted to hide the fact that Speck’s younger former student was, in fact, Speck’s replacement. Because the City feared that “there may be a lawsuit,” it expressly forbade Speck’s replacement from using a job title that revealed that she had assumed Speck’s responsibilities. Dist. Ct. Docket (“Doc”) 73-7 (PI. Resp. Mot. Summ. J. at 14). Viewed in the light most favorable to Speck, a jury could conclude from this evidence that the City’s actions were for an illegitimate, age-based reason.
The pretextual nature of the City’s actions is also reflected by the fact that the justification for the City’s denial of Speck’s request to change her convalescence location — the act that immediately preceded her resignation and the action upon which the majority relies — as well as the reasons behind the other disciplinary actions the City took against Speck are “so lacking in merit as to call into question [their] genuineness.” Hartsel v. Keys, 87 F.3d 795, 800 (6th Cir.1996) (internal quotation marks omitted). Specifically focusing on Speck’s request to change her convalescence location, as the majority does, the record indicates that Speck timely submitted the request in accordance with City *628 policy, and the City was aware that Speck’s physician had not restricted her travel. The City denied the request, but it provided no justification other than the fact that Speck had failed to show “that the proposed convalescent locations [we]re medically necessary and directly related to [her] Medical condition.” Doc. 66-23 (Def.Mot.Summ. J.). Notably, however, the City did not reference any City policy that required Speck to establish such a fact, and the policy the City did reference contains no such requirement. Granting Speck’s request would have cost the City nothing. Speck proposed using her previously accrued vacation time, and because she was already on permanent medical leave, Speck would have been unable to work even if the City had demanded her presence at the clinic during the time of her proposed travel. What is perhaps most troublesome about the City’s denial of Speck’s request, however, is that the request covered a weekend trip that would have taken place on Speck’s personal time. The City exercised its authority to administer its policies in a manner that inserted the City into every moment of Speck’s life, essentially confining her to her home because it believed simply that it could. Given what amounted to a “stay at home or be fired” ultimatum, it is not surprising that Speck resigned.
Moreover, for approximately two years after a flawless fifteen-year tenure, the City began repeatedly charging Speck with violations of City policy, including the misappropriation of funds; making false statements; incompetence; filing false claims for sick-leave benefits; hindering the operation of the City through absenteeism, regardless of the reason; insubordination; and misrepresenting her role. The City ultimately determined that many of the charges were baseless, and the record indicates that the lack of foundation of the charges, in many instances, was plainly apparent from evidence in the City’s possession before it levied the charges. The City’s harassment of Speck continued even after she took permanent medical leave. During that time, the City continued to bother Speck about her absenteeism and her failure to complete her job requirements. The City even charged her with insubordination for failing to accept various assignments from her supervisors, despite the fact that Speck had completed one of the assignments and was unable to accomplish .the others because of her documented medical leave. A reasonable jury could conclude that there was no purpose for the City’s actions other than to encourage Speck to leave her employment. Once she did, the City immediately replaced Speck with a younger worker, and attempted to do so covertly.
Contrary to the majority’s characterization, then, this is not a case where evidence of pretext is confined to the fact that Speck was replaced by a younger employee. That fact, coupled with the City’s attempt to conceal the identity of Speck’s replacement, the baseless denial of Speck’s travel request, and the questionable justification behind the City’s various disciplinary actions, together present sufficient evidence to allow a jury to reject the City’s rationale for taking the actions that culminated in Speck’s resignation and to conclude that she suffered age-based discrimination in her employment.
I further believe that Speck has presented a triable issue as to whether she suffered a hostile work environment based on age. See Crawford v. Medina Gen. Hosp.,. 96 F.3d 830, 834-35 (6th Cir.1996). As outlined above, the City’s harassment of Speck was frequent, severe, and had extreme consequences for Speck’s physical health. Again, not only was Speck replaced by a younger worker, but the City attempted to conceal that fact from Speck, and I believe that this is sufficient evi *629 dence to allow a reasonable jury to conclude that the City’s harassment of Speck was age based.
The manner in which the City treated Speck, only partially outlined above, was suspect. The record suggests that Speck is a capable forensic nurse who has provided beneficial service in her field for the City of Memphis and nationally, and based on the record before us, I believe that Speck has raised triable issues regarding whether she was constructively discharged and subjected to a hostile work environment based on her age in violation of the ADEA. Viewing the record in the light most favorable toward Speck, as we must in evaluating the summary-judgment motion of the City, I would reverse the district court’s grant of summary judgment, and I must respectfully dissent.