**UNITED STATES of America, Appellee,**

v.

**Earl L. GARVIN, Appellant.**

**No. 77–1182.**

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 29, 1977.

Decided Nov. 14, 1977.

Ronald L. Rothman, Clayton, Mo., argued and filed brief for appellant.

Mark Helfers, Asst. U. S. Atty. (argued), and Barry A. Short (former U. S. Atty.), St. Louis, Mo., on brief, for appellee.

Before GIBSON, Chief Judge, and LAY and HEANEY, Circuit Judges.

GIBSON, Chief Judge.

Earl Garvin appeals his conviction on two counts of mail fraud in violation of 18 U.S.C. § 1341.[1] He claims error in the delay in turning over Jenck's Act material, the sufficiency of the evidence, evidentiary rulings restricting his good faith defense, and the admission in evidence of events extending beyond the statute of limitations. Finding prejudicial error in the exclusion of evidence, we reverse and remand.

Garvin is a 39-year-old postal clerk and part-time bar manager.[2] In 1963, he secured Blue Cross and Blue Shield hospitalization insurance through his Government employment. Thereafter, in 1969, he began a practice of applying for additional insurance. Some of the policies provided for payment of hospital bills; others provided for supplemental income while incapacitated. In many if not all cases, the insurance companies solicited his business. Some of the application forms admitted in evidence came from newspaper advertisements and one came from a mass mailing to all Playboy Club members. During 1972 and 1973, Garvin was hospitalized three times for treatment and surgery. There is no claim that these hospitalizations for hemorrhoids, arthritis, deviated septum, calcium deposits, and injuries sustained in a car accident were fraudulent.

Having numerous insurance policies is not a crime. Nor is every misstatement on an insurance application a violation of the mail fraud statutes. For conviction, the Government must prove (1) a scheme conceived by the defendant for the purpose of defrauding the victim by means of false pretenses, representations or promises, and (2) use of the United States mails in furtherance of the scheme. *Gold v. United States*, 350 F.2d 953, 956 (8th Cir. 1965). The present case is based upon Banker's Life and Casualty Company mailing checks to Garvin on or about August 21, 1973, and October 9, 1973, in payment of claims by Garvin under a $300-per-week hospital indemnity policy issued September 1, 1972.[3]

In order to establish that these claims were purposely in furtherance of a scheme to defraud, the Government presented evidence that the policy application signed by Garvin and the claim forms submitted by him contained misrepresentations con-

1. Garvin received concurrent sentences of three years: six months incarceration plus two and one-half years probation.

2. At sentencing Garvin stated he had lost his job after the trial.

3. The Government's evidence concededly was limited on the fraud issue to answers made on the Banker's Life application and claim forms, and on the application to General American Insurance Company. The latter insurance policy was terminated as of issue date because of misstatements on the policy application. A claim filed under the General American policy was not paid.

sidered material by the company. In answer to a query as to defendant's other insurance, the application stated, "None," and both claim forms stated, "Blue Cross and Blue Shield." It is admitted that several policies were in force when these documents were completed. Had the correct answers been given, the company asserts it would not have issued the policy or would have rescinded it, thus it was defrauded.[4]

As further proof of fraudulent intent and of a scheme to defraud, the Government presented evidence of an application for a $200-per-week indemnity policy with Banker's Life issued April 19, 1974. This application was signed by Earl L. Garvin. It erroneously listed only "Blue Cross and Blue Shield" as other insurance. Banker's Life paid no benefits under this policy because coverage was terminated as of the issue date and the premium was returned. In addition there was evidence that in some other application and claim forms prepared and/or signed by Garvin there were misstatements as to his employment and other insurance. However, in these cases either the information was not material to the company or the policy was rescinded without payment of any claim.

As noted above, the defendant admitted that he had other insurance in force when some of the critical statements were prepared. To demonstrate that fact the Government was permitted to introduce evidence that, while the number varied, Garvin had as many as eighteen policies in force when some of the statements were made. During proceedings out of the hearing of the jury, the Government's counsel described this evidence:

> MR. BUSSMAN: Judge, the government is going to object to any testimony about other policies in effect, misrepresentations to Mutual of Omaha. [sic] We have tried to make it clear to defendant that in spite of the fact that the indictment alleges defrauding of four companies, only two were in fact defrauded,

and this man [Melvin Potts, manager of Mutual of Omaha] is simply on the stand to prove that certain policies were issued to the defendant, certain claim forms were filed and a check was paid. There is no allegation that this company had been defrauded or that a material misrepresentation has been made to his company by the defendant.

> We are now starting a long line of companies to which we are simply proving that the defendant had insurance with those companies. No representations were made to those companies insofar as we are charging the defendant. *There is no criminality on the defendant's part with reference to any of those companies.* They are simply in to prove the falsity of the original misrepresentations. (Emphasis added.)

Thus the Government was properly permitted to introduce extensive testimony as to the policies Garvin had in effect when he allegedly made misstatements. *United States v. Sanders,* 563 F.2d 379 at 384 (8th Cir. 1977). It was also allowed to introduce evidence of misstatements in application and claim forms of those policies and a policy applied for after the date of this offense, although no charge was made that these statements were material or fraudulent. This evidence was offered to show an intentional scheme to defraud.

▮ Despite this Government evidence, Garvin was not allowed to present proof of his truthful responses to similar questions on these and other insurance applications filed during the same period. We agree with the District Court that honesty in some transactions is usually irrelevant to the issue of fraud in a different transaction. However, the issue here is the existence of a criminal purpose to defraud and a scheme to defraud insurance companies by the use of the mails. On these issues we find it was error to exclude such testimony. Fed.R.

---

4. Part of Garvin's defense was that several of the documents had been prepared by insurance agents who knew the true facts but assured him they were unimportant. It is admitted that

the Banker's Life policy was advertised "almost as supplemental type coverage to other insurance."

Evid. 404(b); *United States v. Shavin*, 287 F.2d 647, 653–54 (7th Cir. 1961); *Worthington v. United States*, 64 F.2d 936, 941 (7th Cir. 1933). Similarly it was error to prevent cross-examination of insurance company witnesses on whether their application and claim forms contained questions on other insurance.

The Government, in a classic case of overkill, introduced evidence of some eighteen other insurance policies and subpoenaed officials of various insurance companies to testify before the jury as to the issuance of policies to the defendant. These apparently legitimate policies were presented as evidence relevant to a scheme to defraud[5] and to show the existence of other policies, thereby establishing a misstatement in the Banker's Life policies. But almost all of these policies were indemnity policies where the matter of other insurance was immaterial. Thus these legitimate policies were used to form the basis for the Government's innuendo that Garvin took out all of these policies in a grandiose scheme to defraud the insurance companies.

Garvin's illnesses and accident were legitimate, and eventually only the claims made against Banker's Life and possibly General American were shown to contravene policy terms. Given this posture of the case, the removal of the legitimate policies would leave little upon which to predicate a federal charge of mail fraud. The case at best is marginal. Garvin has asserted a good faith defense based on statements from eager insurance salesmen that other policies were actually immaterial, advertising urging supplemental insurance, and the fact that by common knowledge medical and hospitalization insurance policies rarely cover total costs. Garvin should, therefore, in presenting his good faith defense, be permitted to submit evidence of the legitimacy of the other policies introduced against him, and of his lack of intent to defraud. Garvin can

hardly be marked as a felon for incomplete answers if he reasonably believed the insurance companies didn't care about the questions.

■ We need not decide whether the foregoing errors, standing alone, would require reversal, because the testimony of defendant's expert also was excluded erroneously. The defendant proffered Dr. Donald A. Tyree, professor of finance at St. Louis University. Dr. Tyree's professional training and experience as a draftsman of health insurance bid specifications made him a qualified expert on the health insurance industry and the meaning of the language of insurance policies and forms. The trial court recognized Dr. Tyree's expertise but ruled the subject matter was not proper for expert testimony.

Whether expert testimony will be admitted depends on whether it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702; *Jenkins v. United States*, 113 U.S.App.D.C. 300, 307, 307 F.2d 637, 644 (1962). The admission or exclusion of expert testimony is in the sound discretion of the trial court. *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); *Soo Line R.R. v. Fruehauf Corp.*, 547 F.2d 1365, 1374 (8th Cir. 1977). However, exclusion of expert testimony can be the basis for reversal if it was manifestly erroneous and a clear abuse of discretion. *Holmgren v. Massey-Ferguson, Inc.*, 516 F.2d 856 (8th Cir. 1975). In considering the admissibility of expert testimony it is important to keep in mind the matter in issue. In this case the question is whether Garvin acted with the purpose of carrying out a scheme to defraud. The fact he had many policies does not establish a criminal intent. He may have been overinsured, but many policies are intended to supplement other recoveries. To convict, the Government had

---

5. The Government's brief reads: "Appellant states that defendant's good faith defense stood uncontradicted, but appellant fails to point out the great number of policies in effect and prior claims made at the time of defendant's false material responses on the applications and claim forms." The Government's assertion, a few pages later, that evidence of other policies was offered only to prove the existence of those policies, is contradictory and difficult to believe.

to establish a fraudulent intent. Hence, Garvin was entitled to have the jury consider reasonable interpretations of the documentary language. Evidentiary rules from the contract arena are of limited use on this issue.[6]

Insurance application and claim forms are encountered by lay persons; however, it does not follow that a jury's understanding of the contents would not be aided by expert testimony. Many insurance policy forms appear to be designed to raise numerous grounds for contest of claims while exciting minimal suspicions of the insured; many contain ambiguous and conflicting provisions, and some are almost incapable of resolution. In this case the application for the Banker's life hospital indemnity policy in issue asked, "What other insurance is now in force, or has been applied for, on the *life* of the proposed risk?" (Emphasis added.) The insurance company and the Government apparently contend that a truthful response to this question required a listing of other medical and hospitalization insurance. This position is doubtful at best and certainly is an insufficient predicate for a criminal charge.

Garvin sought to show, by Dr. Tyree's testimony, that this question could refer to life insurance only. The question was relevant to Garvin's good faith, the materiality of the question to the insurance company, and the materiality of later misstatements on the claim forms. In this criminal case, the expert testimony of Dr. Tyree would have assisted the jury in understanding the technical language in issue and in determining the facts.[7] We conclude that the exclusion of this testimony was erroneous and a clear abuse of discretion. There can be no doubt as to the prejudice to defendant Garvin. His case was reduced to his own testimony and the testimony of an insurance agent, described by the trial judge as reeking of alcohol. The conviction must be reversed.

We view the evidence of record in this case as extremely marginal. However, as we find nothing to preclude a retrial if the Government chooses that course, we turn to defendant's other issues. The violation, if any, of the Jenck's Act, 18 U.S.C. § 3500, was inadvertent. Garvin was supplied with the survey questionnaires during the Government's case and had an opportunity to cross-examine from them. We do not find the court's ruling denying a mistrial to have been clearly erroneous. *March v. United States*, 362 A.2d 691, 702 (D.C. 1976). Nor have we found any merit to the challenge of evidence of events extending beyond the statute of limitations. This kind of evidence is admissible to show motive, intent, a continuing scheme, and lack of inadvertent action. *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir.), *cert. denied*, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 47 (1975); *United States v. Blosser*, 440 F.2d 697, 699 (10th Cir. 1971). Finally we conclude that although the evidence of a scheme to defraud was at best inconclusive, we cannot say it was insufficient when viewed in the light most favorable to the verdict.

The conviction appealed from is reversed and the case remanded for further proceedings consistent with this opinion.

---

6. Even in contract litigation expert testimony is often allowed to explain technical language. *E. g., Arkla Exploration Co. v. Boren*, 411 F.2d 879, 882 (8th Cir. 1969); *Megarry Brothers, Inc. v. United States*, 404 F.2d 479, 486 (8th Cir. 1968); *Waldrip v. Liberty Mutual Ins. Co.*, 11 F.R.D. 426, 430 (W.D.La.1951).

7. Of the five items of testimony by Dr. Tyree offered by Garvin, we conclude that four should have been admitted. These related to the specific policies taken out by Garvin. Testimony on the motives of insurance companies in drafting their policies was properly excluded as irrelevant.