775 F.Supp. 1219 (1991)
Sharon LANE, Plaintiff,
v.
The GROUND ROUND, INC., Defendant.
No. 90-1533-C-5.
United States District Court, E.D. Missouri, E.D.
October 2, 1991.
*1220 *1221 Mary Anne Sedey, St. Louis, Mo., for plaintiff.
John J. Gazzoli, Robert J. Golterman, Lewis, Rice & Fingersh, St. Louis, Mo., for defendant.

MEMORANDUM
LIMBAUGH, District Judge.
In this case, plaintiff sues her former employer, the Ground Round, Inc. ("Ground Round") for sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. and the Missouri Human Rights Act ("MHRA"), Mo.Rev.Stat. § 213.010 et seq. She alleges she was harassed and ultimately fired because she refused to have sexual relations with her supervisor. This matter is before the Court on defendant's motion for summary judgment.

I. Standard for Summary Judgment

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Co-op. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.

II. Facts

Plaintiff Sharon Lane began her employment with the Ground Round on February 29, 1980 as a hostess in its Florissant, Missouri, restaurant. In late 1981 or early 1982, plaintiff was transferred to the Bridgeton, Missouri, restaurant when the Florissant restaurant closed. She worked there as a waitress and a manager. In 1986 or 1987 plaintiff changed from the manager position to a bartender position after the manager position changed to salary. Plaintiff wanted to remain an hourly employee. Plaintiff worked as a bartender until she was fired on June 20, 1989.
From January 1985 until about June 1988, Michael Gallagher, the general manager at the Bridgeton restaurant, was plaintiff's supervisor. After she became a bartender, Gallagher began making sexual advances toward her. Whenever employees from the restaurant would go out together in a group, Gallagher would sit near *1222 her and make conversation. One night in June or July 1987, a group from work went to a nearby bar. It was plaintiff's off night and she joined them there. Plaintiff had too much to drink and went home with Gallagher. She blacked out from the alcohol and woke up lying naked next to Gallagher, in his bed. Plaintiff was humiliated and frightened and asked Gallagher to take her home.
After that incident, Gallagher persistently tried to engage plaintiff in conversation and get her to go out with him socially. She would try to avoid him, but he persisted. Plaintiff feared that if she was not at least friendly to him he would tell someone what happened. He would sit in the bar and stare at her, sometimes giving her horrible looks which she interpreted as rage. One night Gallagher had a goingaway party at his house for a manager. After the party, he insisted that plaintiff stay and talk. Because he was her boss, she agreed. Gallagher told plaintiff that she needed to quit being afraid and let someone take care of her and that there was no reason that the two of them could not keep working together. During this conversation Gallagher tried to kiss plaintiff. He put his hands on her, touching her on the back of the neck and on her breasts. He frequently touched her in this manner.
Gallagher had a reputation for sleeping with his employees. The joke at the Ground Round was that sleeping with Mike Gallagher was a prerequisite for the job. Gallagher was often violent at work. He would slam his fists into walls or throw objects around the kitchen in a rage. Ms. Lane, who had two dependent children, feared for her job if she did not at least talk with him. Plaintiff continued to refuse his advances. Gallagher reduced her hours and changed her work schedule without notice. When she complained to him about the changes in scheduling, he would tell her it was his store, he could do what he wanted to do and that if she did not like it, she could find another job.
One night in the fall of 1987, Gallagher came into the restaurant apparently intoxicated. One of plaintiff's coworkers said that she would drive him home. But when plaintiff prepared to leave, Gallagher was pounding on her car window, shouting obscenities and demanding that she open the door. All of her coworkers were gone, so plaintiff opened the door. When Gallagher got into the car, he told her that he did not like the way she was avoiding him and that they needed to talk. Plaintiff drove Gallagher to his house. As she drove, Gallagher fondled her. When they arrived, he tried to convince her to come inside with him. She refused. Subsequently, Gallagher repeatedly changed plaintiff's work schedule without warning. This resulted in wasted trips to work and disruption with her other part-time job.
In June 1988, Gallagher was promoted to the regional director for Ground Round's restaurants in Iowa. At that time, Gallagher was removed from his supervisory position over Ms. Lane and no longer had any control over the Bridgeton restaurant. After Gallagher left, plaintiff no longer had any problems with her hours or schedule. Gallagher's new office was located in Iowa, but he continued to visit the Bridgeton restaurant from time to time. On those occasions, he would sit at the bar until plaintiff would talk to him, which made her uncomfortable.[1]
Gallagher maintained contact with Gary Duckworth, the regional supervisor and Gallagher's former boss. Duckworth's office was upstairs in the same building as the Bridgeton restaurant. Lowell Martin became general manager at the Bridgeton restaurant on about June 1, 1988 upon Gallagher's transfer to Iowa. Before Martin become general manager, Gallagher and Duckworth approached him in April or May 1988 and told him that plaintiff was not a family-oriented bartender and that he *1223 should put her on his list of people to replace. After Martin became general manager, Duckworth again told Martin he should fire plaintiff. Martin refused to terminate plaintiff and subsequently was fired himself.[2] John Bell then took over as general manager. Within his first week as general manager, John Bell fired plaintiff on June 29, 1989, and, she alleges, laughed as he did it.
Ground Round had a written harassment policy. It stated that any complaints or instances of sexual harassment must be reported immediately to the restaurant general manager, or if it is appropriate, to the regional director of the human resources department. Plaintiff never complained about Gallagher to either the regional director or the human resources department. Plaintiff did not complain because she felt Duckworth probably already knew because Gallagher was threatened with a lawsuit from another bartender. She also feared she would be fired if she said anything about it. She made no complaint until after she was fired.
On July 25, 1989, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and with the Missouri Commission on Human Rights ("MCHR"). The charge alleged that plaintiff was discriminated against on account of her sex in that Gallagher sexually harassed her from 1984[3] to June 20, 1989. Plaintiff filed this lawsuit on August 13, 1990.

III. Discussion

The basis for Ground Round's motion for summary judgment is that (1) any claims of sexual harassment or discrimination that may have arisen before September 26, 1988 are barred under Title VII and the MHRA, because plaintiff failed to file a timely charge of discrimination with respect to any such claims and failed to bring suit not later than two years after the alleged act or occurrence, as required by the MHRA, Mo.Rev.Stat. § 213.111.1; and, (2) that for any claims of sexual harassment or discrimination that may have arisen from September 26, 1988 up to and including plaintiff's discharge on June 20, 1989, there is no record evidence of any harassment or discrimination rising to the level of a violation of either statute. Plaintiff counters that she suffered from a series of related acts of discrimination that continued from the time Gallagher was her boss, after he left and until she was fired.

A. Sexual harassment

Plaintiff alleges sexual harassment under both Title VII and the MHRA. Decisions under the various federal employment discrimination statutes are applicable and authoritative under the MHRA as well as federal law. Midstate Oil v. Missouri Comm'n on Human Rights, 679 S.W.2d 842 (Mo. banc 1984); Missouri Comm'n on Human Rights v. City of Sikeston, 769 S.W.2d 798 (Mo.App.1989).
Title VII of the Civil Rights Act of 1964 makes it "unlawful for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin." The Supreme Court has held that sexual harassment at the work place is a violation of Title VII. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). Sexual harassment takes one of two forms: harassment creating an offensive hostile work environment or harassment involving the exchange of concrete employment benefits for sexual favors  the "quid pro quo."
Hostile work environment harassment is said to exist when sexual conduct "`has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment.'" Meritor, 477 U.S. at 65, 106 S.Ct. at 2405; *1224 Hall v. Gus Constr. Co., 842 F.2d 1010, 1013 (8th Cir.1988). To prevail on a claim of hostile work environment sexual harassment, a plaintiff must establish that (1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based upon sex; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take appropriate remedial action. Staton v. Maries County, 868 F.2d 996, 998 (8th Cir. 1989); Hall, 842 F.2d at 1013 (citation omitted).
The gravamen of a quid pro quo sexual harassment claim is that tangible job benefits are conditioned on an employee's submission to conduct of a sexual nature and that adverse job consequences result from an employee's refusal to submit to that conduct. Caleshu v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 737 F.Supp. 1070, 1081 (E.D.Mo.1990), aff'd, No. 90-1745 (8th Cir., Oct. 1, 1991). An employer may not require sexual consideration from an employee as a quid pro quo for job benefits. Caleshu, 737 F.Supp. at 1083 (citations omitted). To establish a claim of quid pro quo sexual harassment, a plaintiff must prove that (1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based upon sex; (4) plaintiff's reaction to the harassment complained of affected tangible aspects of the employee's compensation, terms, conditions or privileges of employment; and (5) the existence of respondeat superior liability. Caleshu, 737 F.Supp. at 1070 (citing Highlander v. K.F.C. Nat'l Management Co., 805 F.2d 644, 648 (6th Cir.1986); Henson v. City of Dundee, 682 F.2d 897, 909 (11th Cir.1982).

B. Timeliness

Both Title VII and the Missouri Human Rights Act limit the time within which charges of discrimination must be filed. 42 U.S.C. § 2000e-5; Mo.Rev.Stat. § 213.075.1 (1986). Because Missouri is a deferral state, ordinarily a plaintiff must file complaints with the relevant enforcement agency within 300 days of the discriminatory act. The limitations period commences on the date that the discriminatory act occurred. Delaware State College v. Ricks, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). The MHRA contains an additional limitations period requiring that the suit be filed no later than two years after the alleged act or occurrence. Mo.Rev.Stat. § 213.111.1.

C. Continuing violation

Some courts have recognized an equitable exception to the limitation on the actionable period, known as the "continuing violations" theory. Waltman v. Int'l Paper Co., 875 F.2d 468, 474 (5th Cir.1989); Berry v. Board of Supervisors, 715 F.2d 971, 979 (5th Cir.1983), cert. denied 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986); Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 472 (D.C.Cir.1976). The Eighth Circuit has at least suggested a continuing violations exception. See Cedeck v. Hamiltonian Fed. Sav. & Loan Ass'n, 551 F.2d 1136 (8th Cir.1977). This theory relieves "a plaintiff ... from the burden of proving that the entire violation occurred within the actionable period." Berry, 715 F.2d at 979.
"This equitable exception arises `[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts.'" Waltman, 875 F.2d at 475 (quoting Abrams v. Baylor College of Medicine, 805 F.2d 528, 532 (5th Cir.1986)). Sexual harassment cases frequently involve continuing violations. The isolated events may not rise to a level affecting the terms and conditions of employment, however, the harassing acts accumulate over time. The "individual feels constantly threatened even in the absence of constant harassment." Waltman, 875 F.2d at 476. To establish a continuing violation, a plaintiff must show that at least one incident of harassment occurred within the limitations period. Waltman, 875 F.2d at 474-75.
It is undisputed that Gallagher was transferred and stopped his harassment of *1225 plaintiff in June 1988 and that plaintiff did not file her complaint of any harassment until after she was fired more than a year later. Therefore, plaintiff must show at least one incident of harassment in the 300 days prior to July 25, 1989, when she filed her charge. To support her continuing violations theory, plaintiff asserts 1) Gallagher continued to harass her after his transfer by occasional visits to the restaurant (a hostile environment claim); and 2) her firing was the culmination of a long series of discriminatory acts by Gallagher (a quid pro quo claim).

1. Post-transfer harassment
Gallagher was transferred in June 1988, however, plaintiff asserts Gallagher's occasional visits after his transfer constitute harassment sufficient to establish a continuing violation. Plaintiff alleges that while Gallagher was her supervisor he harassed her on an almost daily basis. After his transfer to Iowa, the harassment became less frequent.
In considering the impact of acts of harassment, the court can consider earlier acts which helped give those acts their force. Downey v. Southern Natural Gas Co., 649 F.2d 302, 305 (5th Cir.1981). With a claim of sexually hostile work environment a continuing violation is often present because the "individual feels constantly threatened even in the absence of constant harassment." Waltman, 875 F.2d at 476. In light of Meritor, the question is whether a reasonable person would feel that the environment was hostile throughout the period that formed the basis of plaintiff's claim. Waltman, 875 F.2d at 476.
Viewing the facts in the light most favorable to plaintiff, the harassment by Gallagher stopped when he was transferred. Plaintiff testified in her deposition that after Gallagher's transfer, he visited the Bridgeton restaurant "several times." On those occasions, Gallagher would attempt to engage plaintiff in small talk. At that time, Gallagher still worked for Ground Round but was out of her chain of command and worked in another state, which was in another region for corporate purposes. The problems plaintiff previously had with hours and scheduling had ceased when Gallagher was transferred. His visits made her feel uncomfortable for a few minutes but had no other effects.
Gallagher's occasional visits to the restaurant, even in light of past events, do not constitute harassment which would cause a reasonable person in that position to feel constantly threatened. See Waltman, 875 F.2d at 476. The visits were infrequent and amounted to no more than attempts to chat with plaintiff. A reasonable person would not feel that the environment was hostile throughout the period that formed the basis of plaintiff's claim. Waltman, 875 F.2d at 476. Gallagher's visits after his transfer certainly did not affect the terms and conditions of plaintiff's employment and are insufficient by themselves to establish a continuing violation.
As discussed above, one of the elements of a hostile environment sexual harassment claim is that the employer knew or should have known of the alleged harassment and failed to take appropriate remedial steps. Plaintiff has put forth no evidence that Ground Round had either actual or constructive knowledge of the alleged harassment. Waltman, 875 F.2d at 478. Plaintiff does not claim that Ground Round had any actual knowledge; she admits that she did not complain to higher management about Gallagher's conduct at any time. Plaintiff cannot show that the harassment was so pervasive so as to give rise to the inference of knowledge or constructive knowledge. Taylor v. Jones, 653 F.2d 1193, 1199 (8th Cir.1981). During the relevant period, the only harassment alleged consisted of Gallagher sitting in the bar of the restaurant on several occasions and making small talk. This conduct is not so pervasive so as to infer constructive knowledge on the part of Ground Round. Even Gallagher's most blatant acts while he was plaintiff's supervisor all occurred outside of work. Further, Martin's affidavit said Gallagher told him to fire plaintiff because she was not a "family-oriented" bartender; he said nothing that would suggest knowledge of Gallagher's previous sexual advances *1226 toward plaintiff. Thus, there is no evidence that Gallagher's conduct, either inside or outside this limitation period, gave Ground Round constructive notice of the alleged sexual harassment.
In sum, the pre-transfer harassment by Gallagher is outside the limitation period. The visits by Gallagher after his transfer neither support a continuing violations theory nor are sufficient themselves to support a hostile environment sexual harassment claim.

2. Discriminatory firing
Plaintiff alleges her termination, which clearly took place during the limitations period, was discriminatory. Plaintiff alleges that because she did not acquiesce to Gallagher's sexual demands she was terminated. Thus, plaintiff alleges quid pro quo harassment with respect to her allegation of discriminatory firing.[4]Caleshu, 737 F.Supp. at 1083.
Plaintiff alleges Gallagher harassed her from the time he became a bartender in 1986, through and after his transfer in 1988, until her termination in 1989. Gallagher, however, never did fire plaintiff. During the time she worked for Gallagher he told her that if she did not like his changes in scheduling she could find another job. Even if these remarks could be construed as threats, they were tied to job-related issues, not to sexual demands.
Further, plaintiff does not claim that anyone other than Gallagher harassed her. Gallagher was transferred from the restaurant where plaintiff worked and ceased being her supervisor one year before she was fired. Gallagher's successor, Lowell Martin, stated in his affidavit that before Gallagher was transferred both he and Duckworth told him that firing plaintiff should be a high priority. Nonetheless, Martin never did fire her. Plaintiff's termination did not take place until nearly a year later. By that time John Bell had replaced Martin as plaintiff's supervisor. Plaintiff has put forth no evidence of any involvement of Gallagher in plaintiff's termination by John Bell.
In sum, plaintiff has failed to come forward with evidence of quid pro quo sexual harassment, specifically that her reaction to the alleged harassment affected tangible aspects of her compensation, terms, conditions or privileges of employment. Caleshu, 737 F.Supp. at 1083. The acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment. Caleshu, 737 F.Supp. at 1084.
In this case, plaintiff has failed to come forward with evidence that her refusal to acquiesce to Gallagher's demands had any effect on her ultimate termination. Plaintiff admits that any problems she had with scheduling and hours ended when Gallagher was transferred. Gallagher did not fire plaintiff. Although Gallagher did urge Martin to fire plaintiff, Martin never did. A different supervisor, John Bell, discharged plaintiff and he did so without any advice from Gallagher.
Plaintiff's firing was not sexual harassment, therefore, it cannot serve as a continuing violation to bring plaintiff's claim regarding earlier discrimination within that exception to the limitations period.
The Court certainly does not condone Gallagher's actions while he was plaintiff's supervisor. Nonetheless, plaintiff's claim simply was not timely with regard to those events. Gallagher did urge his successor to fire plaintiff, but that urging occurred before he was transferred. That transfer occurred more than 300 days before plaintiff filed her charge of discrimination with the relevant agencies and more than two years before plaintiff filed this lawsuit. Plaintiff's only evidence of harassment after Gallagher was transferred is that he visited the restaurant on a few occasions, stared at her and attempted to engage her in small talk. The evidence of harassment during the limitations period is simply insufficient to withstand defendant's motion for summary judgment. There is no genuine *1227 issue as to material fact and defendant is entitled to judgment as a matter of law.
Accordingly, defendant's motion for summary judgment will be granted.
NOTES
[1] Gallagher testifies by affidavit that after his transfer he visited the Bridgeton restaurant only about three times and that he did no more than say hello to plaintiff. The Court must view the facts in the light favorable to plaintiff and accept her testimony that Gallagher visited more frequently. Her deposition states Gallagher came to the restaurant "several times" after his transfer.
[2] It is somewhat unclear how long Martin was plaintiff's supervisor, however, this fact is not material. Martin did not fire plaintiff and there is no evidence to suggest Gallagher even attempted to persuade Bell to do so.
[3] Plaintiff testified at her deposition that the period of harassment began in 1986, when she became a bartender, not in 1984.
[4] Plaintiff makes no claim of retaliatory discharge or disparate treatment with respect to her termination; her claim is solely of sexual harassment.