Ravindra **KALIA,** Respondent,

v.

**ST. CLOUD STATE UNIVERSITY,**
a Minnesota State University,
Appellant.

No. C7–95–730.

Court of Appeals of Minnesota.

Nov. 21, 1995.

Brian E. Cote, Sandra R. Boehm & Assoc., Ltd., St. Paul, for Respondent.

Hubert H. Humphrey, III, Attorney General, Kurt J. Erickson, Assistant Attorney General, St. Paul, for Appellant.

Considered and decided by SHORT, P.J., and PARKER and PETERSON, JJ.

## OPINION

PARKER, Judge.

Respondent Kalia sued his current employer for unlawful discrimination in promotion, retention, tenure and emotional distress under the Minnesota Human Rights Act (MHRA). Appellant St. Cloud State University (SCSU) moved the court for summary judgment, claiming that, as a government entity, it is protected from liability by official immunity. SCSU further claimed that, as a public body, it is entitled to protection by vicarious official immunity for the acts of the University president, who is responsible for making the decisions regarding Kalia's career. The district court denied SCSU's motion for summary judgment on the discrimination and emotional distress counts based on official immunity. However, the district court granted a conditional summary judgment for SCSU based on the statute of limitations as to conduct before March 16, 1988, and after March 16, 1989. We affirm in part, reverse in part, and remand.

## FACTS

In 1984, Dr. Ravindra Kalia applied for a fixed-term, probationary associate professor position in the mathematics department at SCSU. Kalia is of East Indian ancestry. Prior to seeking employment with SCSU, Kalia taught mathematics for 14 years at Lucknow Christian College in India, one year at Adrian College in Michigan, and four years at Southwest State University in Marshall, Minnesota.

In the fall of 1985, SCSU hired Kalia as a non-probationary associate for the 1985–86 academic year. Kalia accepted the non-probationary appointment.[1] Unsatisfied with SCSU's explanation in offering the non-probationary appointment, Kalia filed a complaint with the Equal Employment Opportunities Commission (EEOC), alleging discrimination based on national origin and color. The EEOC determined that the evidence presented did not support Kalia's allegations, and dismissed the complaint.

Kalia reapplied for a probationary position in the spring of 1986. Against the recommendation of the Search Committee (SC), the department chairperson hired Kalia as a probationary associate, with spring 1990 designated as the latest tenure decision date.

In the fall of 1986, Kalia was evaluated by the Department Evaluation Committee (DEC). The DEC was responsible for deciding whether to recommend renewal of Kalia's probationary appointment for the 1987–88 academic year. Although renewal was recommended, several DEC members noted that they had reservations about Kalia's "teaching effectiveness." However, none of the DEC members provided any explanation as to what was meant by teaching effectiveness.

After evaluating Kalia in 1987, the DEC recommended nonrenewal of Kalia's probationary appointment for the 1988–89 academic year. Although it was noted that Kalia had received favorable student evaluations, the DEC again cited teaching effectiveness as the primary reason for the decision. One DEC member also noted that there were rumors that Kalia's credentials might contain questionable information. However, the member did not indicate the source of the rumor or offer any evidence to support the credibility of it.

---

1. A fixed-term, non-probationary appointment is for a limited period of time; it terminates at the end of the stated period and carries no implication for future employment. A probationary appointment is for a stated term, pays a higher salary, and is for the purpose of evaluating the faculty member. A probationary appointment allows time for the faculty member to be evaluated for a tenured appointment. Persons with probationary appointments have between one and five years to obtain tenure. If the probationary period is successfully completed, tenure may be granted. Art. 21, sec. E, subd. 5, of the InterFaculty Organization/Minnesota State University Board Collective Bargaining Agreement.

In May 1987, the recommendation of the DEC was reviewed by SCSU's vice president of academic affairs. While concluding that recommendations of the DEC and the college were not taken lightly, the vice president overturned the DEC's recommendation of nonrenewal and retained Kalia for the 1988–89 academic year.

In April 1988, Kalia met with DEC members to discuss renewal of his appointment for the 1989–90 academic year. At that time, Kalia was told by the DEC chairman that renewal would not be recommended unless he permitted DEC members to visit his classroom to evaluate his "teaching effectiveness." Although Kalia agreed to the request, the DEC chairman testified during depositions that no such request had been made of other probationary professors in the past.[2]

In May 1988, Kalia received notice that his probationary appointment would not be renewed for the 1989–90 academic year. Kalia filed a grievance under the union contract. The grievance was sustained. In March 1989, Kalia filed a discrimination complaint with the EEOC and the Minnesota Human Rights Department (MHRD) based on SCSU's decision not to renew his appointment. SCSU again decided not to renew Kalia's appointment. Kalia filed a grievance as to this decision in September 1990, and this grievance was also sustained.[3]

By November 1990, with the end of the five-year tenure review period for probationary associates approaching, SCSU and Kalia agreed to establish new criteria and a new timetable in which to reconsider his application for tenure. In the spring of 1992, SCSU denied Kalia's application for promotion to tenured professor, citing "lack of evidence of teaching effectiveness" and "unconvincing peer evaluations" as primary reasons for denying nonrenewal. SCSU granted Kalia's application for tenure in May 1992. Kalia

has since been promoted to full professor and remains at SCSU.

Kalia's suit under the MHRA alleges that, by the discriminating acts of SCSU, his applications for achievement of promotion and tenure were delayed three and two years, respectively, and that he has suffered emotional stress, loss of reputation, and lost opportunity to engage in research and other ventures.

## ISSUES

I. Does official immunity shield SCSU from Kalia's MHRA claims?

II. Did the trial court err in granting a conditional summary judgment as to application of the statute of limitations period to the admissibility of evidence of continuing violations of the MHRA?

## DISCUSSION

■ Denial of a motion for summary judgment based on a claim of governmental immunity is appealable as a matter of right. *McGovern v. City of Minneapolis*, 475 N.W.2d 71, 72 (Minn.1991). A motion for summary judgment will be granted only where it is shown that there is no genuine issue of material fact. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

■ A reviewing court is not bound by and need not give deference to a trial court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I.

SCSU argues that Kalia's discrimination claims under Minn.Stat. § 363.03, subd. 1(2) (1994), are barred by the doctrine of official immunity. SCSU also argues that it is protected by vicarious official immunity from liability for the president's decision regarding Kalia's promotion, tenure and retention.

---

2. The DEC chairman admitted to having investigated Kalia to verify whether he had actually worked with German mathematician Gerhart Rosenberger. The DEC chairman further stated that even after the investigation verified Kalia's information, he still was not convinced that Kalia was who he said he was.

3. While the grievance was pending, the DEC chair recommended that Kalia's office be vacated. After the grievance was sustained, the DEC chairman presented Kalia with a list of assignments for the fall quarter. Due to the extensive nature of the assignments, both parties agreed to a scaled-down list.

Further, SCSU contends there are no genuine issues of material fact upon which a denial of summary judgment may be based.

 Minn.Stat. § 363.03, subd. 1(2), renders unlawful certain discriminatory conduct in the workplace. *Id.* The statute defines "employer" as "a person who has one or more employees" and defines "person" as a

> partnership, association, corporation, legal representative, trustee, trustee in bankruptcy, receiver, *and the state and its departments, agencies, and political subdivisions.*

Minn.Stat. § 363.01. subds. 17, 28 (1994) (emphasis added). This provision explicitly renders the state, its agencies, and subdivisions subject to liability for violation of MHRA when discriminatory conduct can be shown. SCSU claims its actions are shielded by official immunity.

 The doctrine of official immunity provides:

> "[A] public official charged by law with duties which call for the exercise of his [or her] judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong."

*Elwood v. Rice County,* 423 N.W.2d 671, 677 (Minn.1988) (quoting *Susla v. State,* 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976)). However, official immunity may bar a discrimination claim under Minn.Stat. § 363.03 only when there is no showing of willfulness or malice in regard to the conduct of that official. *State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567, 570 (Minn. 1994).

 The Minnesota Supreme Court has concluded that under Minn.Stat. § 363.03, an unfair discrimination practice will have occurred where the record establishes

> treatment so at variance with what would reasonably be anticipated absent discrimination that discrimination is the probable explanation.

*Beaulieu,* 518 N.W.2d at 571 (quoting *City of Minneapolis v. Richardson,* 307 Minn. 80, 87, 239 N.W.2d 197, 202 (1976)). However, in determining whether the official has committed a malicious wrong, the fact-finder must consider whether the official has intentionally committed an act that he or she had reason to believe is prohibited by statute or the constitution. *Id.* (citing *Rico v. State,* 472 N.W.2d 100, 107–08 (Minn.1991)).

There seem few instances in which a public official might be deemed to have committed an unlawful discriminatory act in employment under Minn.Stat. § 363.03, subd. 1, and yet be found not to have committed a malicious or willful wrong under the objective standard set forth in *Rico. See id.*

> [I]f a reasonable fact finder could determine that defendants have engaged in racial discrimination under the *Richardson* standard, then a reasonable fact finder could also conclude that defendants acted maliciously under the *Rico* standard.

*Id.* at 572 n. 8.

Applying this analysis to the instant case, the trial court found that Kalia had produced evidence of a prima facia case of discrimination and emotional distress so as to defeat the official immunity claimed by SCSU. Whether an official engaged in discriminatory conduct or acted willfully or maliciously is a question of fact to be resolved by a jury. *Id.; see also Elwood,* 423 N.W.2d at 678. Because the record indicates that prohibited conduct may have occurred, a genuine issue of material fact remains as to whether that conduct constituted unlawful discrimination. If so, then such violation of Minn.Stat. § 363.03, subd. 1, would or could constitute willful or malicious acts excepted from official immunity. Accordingly, the trial court did not err in denying SCSU's motion for summary judgment as to this issue.

## II.

 Kalia, by notice of review, has petitioned for discretionary review of the trial court's order conditionally granting summary judgment based on the statute of limitations and barring evidence of discriminatory conduct before March 16, 1988, and after March 16, 1989. We have been asked, in the interest of judicial efficiency, to grant discretionary review of this issue. This court generally disfavors discretionary review because it

often sails perilously close to granting a request for an advisory opinion.

We grant Kalia's request for discretionary review here only because the trial court appears to have made somewhat divergent rulings on the breadth of the application of the statute of limitations.

The trial court's summary judgment order was "conditionally" granted limiting the discrimination claims to the stated period. Thus, it first appears to be applicable only to bar a cause of action that might otherwise have arisen prior to March 16, 1988, or after March 16, 1989. However, in the attached memorandum, which under Minn.R.Civ. App.P. 103.03 must be considered part of the order, the trial court states:

> [A]ny evidence of discriminatory practices occurring one year prior to the filing of his charge with MHRD on March 16, 1989 is properly before this court. * * * Only evidence of discrimination against Kalia by the University occurring one year prior to the filing of his charge with the MHRD will be considered by this court.

(Emphasis added.)

■ Kalia has made a claim for acts which constitute discrimination based on national origin and color that occurred within the time period specified in the trial court's order granting conditional summary judgment.

The Minnesota Rules of Evidence provide:

> All relevant evidence is admissible, except as otherwise provided by the United States Constitution, the State Constitution, statute, by these rules, or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible.

Minn.R.Evid. 402. Thus, all relevant evidence is presumptively admissible unless exclusion is mandated by other controlling law.

As indicated above, the trial judge made clear his intentions regarding admissible evidence:

> The only evidence of the University's conduct properly before this court is any dis-

criminatory practices occurring one year prior to the charge filed by Kalia with the MHRD on March 16, 1989.[4]

This was stated in two separate places in the memorandum to the trial court's order. The only relevant law cited, and that which the court appeared to rely upon, is Minn.Stat. § 363.06, subd. 3, the statute of limitations section of the MHRA. In this case, however, where there are allegations of continuing violations of the Act, evidence of prior acts of discrimination may be necessary to prove that conduct falling within the period of liability was the product or result of unlawful discrimination. Such evidence of prior discriminatory acts is relevant to Kalia's timely claims and should not be excluded merely because the evidence also proves unlawful conduct that would be actionable but for the statute of limitations.

■ Minn.Stat. § 363.06, subd. 3, bars only *claims* for violations that fall outside its applicable period. *See id.* The statutory bar does not refer to evidence and, like other statutes of limitations, does not bar evidence relevant to a timely filed claim, especially otherwise admissible evidence that would assist a fact-finder in ascertaining the truth. *See Brinkley–Obu v. Hughes Training, Inc.,* 36 F.3d 336, 346 (4th Cir.1994) ("Statutes of limitations do not operate as an evidentiary bar controlling the evidence admissible at the trial of a timely-filed cause of action.").

■ The Minnesota Supreme Court has held evidence of conduct occurring outside a limitation period to be "admissible without regard to the statute of limitations" where it is offered to establish an element of actionable conduct such as malice. *Advanced Training Sys., Inc. v. Caswell Equip. Co., Inc.,* 352 N.W.2d 1, 10 (Minn.1984) (citing *Hammersten v. Reiling,* 262 Minn. 200, 208, 115 N.W.2d 259, 265, *cert. denied,* 371 U.S. 862, 83 S.Ct. 120, 9 L.Ed.2d 100 (1962)). In *Advanced Training Systems,* the court held that libelous statements time-barred with respect to liability could be considered by the jury because the statements tended to show the defendant's willful indifference to the

---

4. We note the ambiguity of the trial judge's literal statement. We are confident, however, that the trial judge meant to say that only evidence of discrimination occurring *within* one year prior to the charge filing would be considered.

plaintiff's rights, a prerequisite to an award of punitive damages.[5] *Id.*

In employment discrimination cases, Minnesota courts have recognized that the doctrine of continuing violations—applicable in cases where " 'the unlawful employment practice manifests itself over time, rather than as a series of discrete acts' "—provides an exception to the one-year statute of limitations in the MHRA. *Giuliani v. Stuart Corp.*, 512 N.W.2d 589, 595 (Minn.App.1994) (quoting *Lane v. Ground Round, Inc.*, 775 F.Supp. 1219, 1224 (E.D.Mo.1991)). Under that doctrine, however, "a plaintiff must show that at least one incident * * * occurred within the limitations period." *Id.*

This court also recognized the doctrine of continuing violations in *Sigurdson v. Isanti County*, 433 N.W.2d 910, 913 (Minn.App.), *affirmed*, 448 N.W.2d 62 (Minn.1989) (citing *Bazemore v. Friday*, 478 U.S. 385, 402, 106 S.Ct. 3000, 3009, 92 L.Ed.2d 315 (1986); *EEOC v. Inland Marine Industries*, 729 F.2d 1229 (9th Cir.), *cert. denied* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984); *California State Employees' Ass'n v. California*, 682 F.Supp. 1044 (N.D.Cal.1987)). Here, rather than ruling on the extension of liability beyond the limitations period, we address merely the admissibility of evidence essential to proving Kalia's timely claims, which are based at least in part on evidence of a continuing pattern and practice of discrimination.

As the above cases indicate, Minnesota courts have adopted many of the same principles of employment discrimination law as those followed by the federal courts, due to the similarities in state and federal legislation:

> In analyzing cases brought under the [Minnesota Human Rights] Act, we have often applied principles developed in the adjudication of claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, et seq. (1982), because

of the substantial similarities between the two statutes.

*Sigurdson v. Isanti County*, 386 N.W.2d 715, 719 (Minn.1986) (citing *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 441 (Minn. 1983)). *See also Danz v. Jones*, 263 N.W.2d 395 (Minn.1978) (adopting the three-step analysis established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

In *Bazemore*, the United States Supreme Court held that evidence of racial discrimination prior to the date that Title VII became applicable to public employees was "quite probative" and thus admissible in an action alleging a pattern and practice of discrimination. *Bazemore*, 478 U.S. at 402, 106 S.Ct. at 3010 (citing *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 309–10 n. 15, 97 S.Ct. 2736, 2742–43 n. 15, 53 L.Ed.2d 768 (1977) ("[p]roof that an employer engaged in racial discrimination prior to the effective date of Title VII might in some circumstances support the inference that such discrimination continued")). In a different "pattern and practice" case, the Sixth Circuit rejected the argument that admissible evidence was limited to events occurring within the statute of limitations. The court stated:

> In order to prove [their case], plaintiffs will certainly have to present evidence of events that occurred more than one year prior to the commencement of their suit.

*Black Law Enforcement Officers Ass'n v. City of Akron*, 824 F.2d 475, 483 (6th Cir. 1987) (citing *United States v. Garvin*, 565 F.2d 519, 523 (8th Cir.1977) (evidence of events extending beyond the statute of limitations is admissible to show motive, intent, a continuing scheme, and lack of inadvertent action)).

Finally, we note that other states that have faced this issue have made similar rulings. *See Hamer v. Civil Rights Comm'n*, 472 N.W.2d 259, 263 (Iowa 1991) (prior acts of discrimination are relevant to show the gen-

---

**5.** We also note that although evidence of prior conduct or "other bad acts" is generally not admissible to prove conduct in conformity therewith, it is admissible to prove other elements of illegal conduct such as "motive, opportunity, in-

tent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn.R.Evid. 404(b); *State v. Moorman*, 505 N.W.2d 593, 600 (Minn.1993).

eral atmosphere of defendant's workplace and "need not be actionable in themselves in order to be admissible"); *General Elec. Corp. v. Human Relations Comm'n,* 469 Pa. 292, 365 A.2d 649 (1976) (evidence of practices prior to effective date of sex discrimination amendment admissible to establish state of mind).

At best, it would be difficult for the trier of fact to make a reasonable determination as to whether SCSU's treatment of Kalia constituted discrimination if the scope of the evidence presented is limited to the period of March 16, 1988, to March 16, 1989. If the evidentiary period is limited, the only specification of SCSU's conduct would include one instance of SCSU's refusal to renew Kalia's appointment and the result of one subsequent grievance. Given the breadth of evidence on the record, a one-year limit would allow the fact-finder only a tiny and possibly misleading glimpse of a much bigger picture. The record contains extensive evidence of SCSU's conduct, both before March 16, 1988, and after March 16, 1989, that cannot reasonably be excluded from proof of this claim.

The request by SCSU (during the statutory period) requiring Kalia to submit to classroom monitoring was not the initiating incident in this sequence of occurrences; the classroom monitoring appears, rather, to represent the "peak" in a series of prior related incidents. We are concerned that the conditional granting of summary judgment so as to exclude the information leading up to this "peak" would be an undue restriction of the evidence. We granted discretionary review out of concern for the unduly limited breadth of evidence deemed admissible by the conditional summary judgment order.

██ Under the doctrine of continuing violations, the fact-finder must thoroughly review the record to determine whether the series of incidents complained of constitutes prohibited acts, thereby showing a pattern of discrimination. The Minnesota Supreme Court specifically addressed the issue of continuing violations in *Sigurdson v. Isanti County,* 448 N.W.2d 62 (Minn.1989).

In *Sigurdson* a female employee worked in the Isanti County assessors office as a clerk in 1976 and was later promoted to "property assessor" in 1980.[6] *Sigurdson,* 448 N.W.2d at 64. At all times, plaintiff had been qualified and had been allowed to do the tasks of the higher-paid "deputy assessors." *Id.* Furthermore, there had been unfilled vacancies for deputy appraisers in the office, but plaintiff had never been promoted to that position. *Id.* Plaintiff sued the county for gender discrimination under MHRA, alleging that she should have been made a deputy assessor. *Id.* The court held:

> [T]he discrimination lies in the continuing act of failing to promote Sigurdson to deputy assessor with a deputy assessor's pay, a failure which continued notwithstanding that she was allowed to do appraising in September 1979 and notwithstanding the adoption of the so-called job classification system in March 1980.

*Id.* at 68.

The instant case appears similar to *Sigurdson* in that there is evidence that the discrimination claimed has occurred over a continuing period of time with the purpose of denying tenure and promotion. Further, the past harm, it is claimed, has not been cured by the complainant having ultimately received tenure.

The evidence of discriminatory acts that occurred prior to the statute of limitations period may be probative of SCSU's motive or intent regarding any of Kalia's timely filed claims. *See Bazemore,* 478 U.S. at 402, 106 S.Ct. at 3010; *Black Law Enforcement Officers,* 824 F.2d at 483; *Garvin,* 565 F.2d at 523. Where a continuing violation exists, the Minnesota Supreme Court has held that evidence of these claims is not necessarily restricted to the statute of limitations period. *Sigurdson,* 448 N.W.2d at 67. In this case, evidence of discriminatory acts that occurred outside the period specified in the order for partial summary judgment may be probative of the intent of SCSU in performing acts claimed to constitute discrimination. *See id.* The trial court erred, therefore, in barring such evidence.

6. This change of job title was the result of a renegotiation of the union contract in 1980.

## DECISION

Kalia's claims are not barred by official or vicarious official immunity, because there are "genuine issues of material fact" as to whether the alleged discriminatory actions of SCSU were done in violation of Minn.Stat. § 363.03, subd. 1, and whether the actions were willful or malicious. Therefore, the trial court properly denied SCSU's motion for summary judgment regarding its official immunity defense. There is evidence in the record to support application of the continuing violations doctrine, as well as evidence that supports Kalia's discrimination claim. The trial court erred in applying the statute of limitations to bar evidence of discriminatory acts outside the period. Upon remand, Kalia must be allowed to show evidence of such acts both prior to March 16, 1988, as well as after March 16, 1989, which tend to substantiate the claims of discriminatory conduct committed within the limitations period.

**Affirmed in part, reversed in part, and remanded for trial.**

SHORT, Judge (dissenting).

While I agree that vicarious official immunity does not bar respondent's discrimination claims, I respectfully dissent on the non-immunity issues because those issues are not properly before us.

Federal case law on the appealability of orders involving immunity claims may serve as a guide to our interpretation of the right to appeal under our rules of appellate procedure. *Cf. Anderson v. City of Hopkins,* 393 N.W.2d 363, 364 (Minn.1986) (holding that federal case law *"ought* to be followed" in interpreting appealability of rulings on immunity of state officials for violations of federal law). Precedent of the United States Supreme Court limits interlocutory review of immunity rulings to cases involving neat abstract issues of law and undisputed facts. *Johnson v. Jones,* — U.S. —, —, 115 S.Ct. 2151, 2158, 132 L.Ed.2d 238 (1995) (quoting 15A Charles A. Wright et al., Federal Practice and Procedure § 3914.10, at 664 (1992)).

The conditional adjudication on the statute of limitations issue is subject to modification prior to entry of a final judgment, and the trial court is free to consider the impact of later evidence and rulings. *See* Minn. R.Civ.P. 54.02 (in the absence of an express determination that immediate entry of final judgment is appropriate, order adjudicating less than complete case "is subject to revision at any time before the entry of judgment"). A decision that "is tentative, informal or incomplete" is not appealable. *Swint v. Chambers County Comm'n,* — U.S. —, —, 115 S.Ct. 1203, 1208, 131 L.Ed.2d 60 (1995) (quoting *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949)). The ruling on the statute of limitations is not final, and it is not, on its own, immediately appealable.

The right of a governmental entity to take an immediate appeal on an immunity issue confers no right on other parties to interlocutory review of unrelated rulings not "inextricably intertwined" with the immunity issues. *Id.* at —, 115 S.Ct. at 1212. This court should not "encourage parties to parlay [immunity] orders into multi-issue interlocutory appeal tickets" by extending review to other issues. *Id.* at —, 115 S.Ct. at 1211. Review of the statute of limitations ruling in this case is in no way "necessary to ensure meaningful review of" the immunity issue and thus, not properly before us. *Id.* at —, 115 S.Ct. at 1212. I dissent because it is inappropriate to expand the scope of this appeal by extending discretionary review. *See McKenzie v. Northern States Power Co.,* 440 N.W.2d 183, 185 (Minn.App.1989) (declining to expand the scope of discretionary review); *Clark v. Monnens,* 436 N.W.2d 830, 831 (Minn.App.1989) (same); *Karlstad State Bank v. Fritsche,* 374 N.W.2d 177, 184 (Minn.App.1985) (same).